IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Denise Renee Shaw, | Case No. 3:22-cv-1858-TLW |
| PLAINTIFF, | |
| v. | |
| Wal-Mart Stores East, LP and PepsiCo, Inc., Bottling Group, LLC, and Pepsi-Cola Metropolitan Bottling Company, Inc., | ORDER |
| DEFENDANTS | |

Presently pending before the Court is Defendants PepsiCo, Inc., Bottling Group, LLC, Pepsi Cola Metropolitan Bottling Company Inc. and Wal-Mart Stores East, LP's (collectively, "Defendants") motion for summary judgment as to Plaintiff Denise Renee Shaw's remaining causes of action. ECF No. 51. Defendants' motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* For the following reasons, the Court grants Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

The undisputed facts, in the light most favorable to Plaintiff, are as follows:[1] on May 29, 2019, Plaintiff was shopping at the Wal-Mart store on Two Notch Road in Columbia, South Carolina. ECF No. 1–1 at 4. While completing her shopping, Plaintiff entered the water aisle of the store, where various cases of water were

---

[1] Security cameras recorded the incident at issue in this case. *See* ECF No. 51–5. Plaintiff does not contest the accuracy of the cameras' video and stated in her deposition that the video accurately captured her fall. ECF No. 41–4 at 11:4–10. Moreover, Plaintiff has filed a stipulation that the video is authentic and admissible. ECF No. 50.

displayed on both shelves and floor level wooden pallets. ECF No. 51–5. Plaintiff approached one of these pallets at the end of the aisle, which contained five cases of Aquafina water. *Id.* Each of these cases held thirty-two water bottles and was packaged in plastic shrink wrap. *Id.* As illustrated by video from the security cameras, Plaintiff stepped onto the pallet, bypassed the closest case of water, squatted, and pulled several times on a case further back on the pallet with one hand. *Id.* After pulling on this case of water several times, the video shows Plaintiff failing backwards and landing on her rear end. *Id.*

Plaintiff then stood up, reentered the pallet, and picked up a second case of Aquafina water, before placing it in her shopping car. *Id.* She then left the water aisle. *Id.* However, Plaintiff returned several minutes later, and reached back onto the pallet, pulling a case of Aquafina water forward. *Id.* Plaintiff used her cellphone to take several pictures of the case to document the stretching of the plastic shrink. *Id.* For example, Plaintiff took the following photo:



ECF No. 59–4 at 63. After taking several photos, Plaintiff again left the water aisle. ECF No. 59–5.

A few minutes later, Plaintiff again returned to the water aisle. *Id.* This time, she brought a Wal-Mart employee with her and showed her the pallet of Aquafina water. *Id.* Plaintiff then left the water aisle again before returning with a second Wal-Mart employee. *Id.* The second employee took several photographs of the pallet of water, including the following photo:



ECF No. 51–6 at 5. After completing her shopping, Plaintiff left the store and went to the emergency room. *Id.* at 31:4–24.

The case of water at issue was not preserved by the parties. According to Defendants, neither Plaintiff's nor Wal-Mart's photos capture the necessary information needed to identify either the source or date of the manufacture of the case of water. ECF No. 51–1 at 5. However, Defendants have submitted the following evidence relevant to the issue of summary judgment regarding the standards governing the packaging of case of water at issue. Attached to

Defendants' motion is the declaration of Ray McGarvey who is the R&D Director – Packaging Commercialization at PepsiCo. ECF No. 51–2. According to Mr. McGarvey, regardless of the date and source of the thirty-two count case of Aquafina water at issue's manufacture, it was subject to PepsiCo Beverages North America's Global Packaging Development Protocols and Global Packaging Performance Standards, which apply equally to all manufacturing sites. *Id.* These performance standards "are effective at promoting the sufficiency and safety of Aquafina products like the one involved in the case." *Id.* at ¶ 3. Moreover, Mr. McGarvey's affidavit notes that the machines which apply the shrink packaging as well as the post-shrink-wrapped cases of Aquafina water are inspected multiple times a day in order to "promote uniformity of shrink packaging and, in turn, sufficiency—regardless of where and when a product like Aquafina is ultimately packaged." *Id.* at ¶ 8.

## PROCEDURAL HISTORY

On May 11, 2022, Plaintiff filed suit in the Court of Common Pleas for Richland County, South Carolina. ECF No. 1–1.  Her complaint asserts three products liability causes of action, which sound in (1) strict liability, (2) breach of warranty, and (3) negligence. *Id.* Defendants removed the case to this Court on the basis of diversity jurisdiction. ECF No. 1. Following removal, Defendants filed a motion to dismiss Plaintiff's breach of warranty claim on the grounds that Plaintiff failed to state a cognizable claim against Defendants because she did not plead facts sufficient to establish the existence of any implied warranties. ECF No. 16 at 3.

After further briefing from the parties, the Court granted Defendant's motion on October 26, 2022. ECF No. 34. Generally, the basis for granting that motion was because the water was not actually purchased by Plaintiff. *Id.* Therefore, the benefit of the implied warranties did not attach without a sale or purchase. *Id.*

On November 11, 2023, Defendants filed their present motion for summary judgment. ECF No. 51. Plaintiff filed a brief response in opposition to Defendants' motion focusing only on the issues of (1) warning and (2) negligent display of the case of water. ECF No. 52. Plaintiff's response did not specifically address Defendants' basis for summary judgment on the strict liability or negligence in failure to properly package or inspect the case of water at issue. *See id.* Defendants have filed a reply. ECF No. 54. Accordingly, The matter is now ripe for the Court's review.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate both that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. Id. at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

The Court has carefully reviewed the record before it, including the pleadings, the provided exhibits, the parties' briefing, as well as the caselaw cited therein. Again, Plaintiff challenges Defendants' motion for summary judgment only on the issues of warning and negligent display. Based on this extensive review, the Court concludes Defendants are entitled to summary judgment as to Plaintiff's two remaining causes of action, those claims being (1) strict liability and (2) negligence in in failing to properly package, inspect, and display the case of water at issue. Because Plaintiff's two remaining causes of action assert claims of strict liability

and negligence, the Court will separately explain its analysis as to those claims, as well as whether the extent to which they have been abandoned.

As noted, Plaintiff's response in opposition to Defendants' motion for summary judgment is brief, and its arguments are limited in scope. However, the Court has engaged in significant analysis, as set forth in this order, to decide Defendants' summary judgment motion. As the non-moving party, the Court has carefully viewed the facts in the light most favorable to Plaintiff. In doing so, and as illustrated below, it has used these facts to evaluate whether there is any basis to conclude that her claims survive summary judgment under either a strict liability or negligence theory of liability. For the reasons that follow, the Court concludes that Plaintiff has not met her burden of coming forward with specific evidence showing that there is a genuine issue of fact for trial. As well, Plaintiff has not shown that she can meet the legal requirements necessary for her case to survive summary judgment. *See Dubois v. Flint Equip. Co.*, No. 2:20-CV-02029-JD, 2022 WL 17830611, at *1 (D.S.C. Nov. 9, 2022) ("To establish defectiveness in a technically complex case a plaintiff must come forward with relevant and reliable expert testimony."). Plaintiff offers no expert testimony in her case. Hence, Defendants are entitled to judgment as a matter of law for the reasons stated herein.

## I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STRICT LIABILITY CLAIM

Plaintiff's first cause of action is a products liability claim in strict liability. Specifically, Plaintiff asserts that Defendants are strictly liable because the case of

Aquafina water "was in a defective condition unreasonably dangerous to the Plaintiff which caused the physical injuries and damage suffered by the Plaintiff." ECF No. 1–1 at ¶ 8. In their motion for summary judgment, Defendants assert that they are entitled to judgment as a matter of law because Plaintiff has not proffered the necessary expert to establish that the case of Aquafina at issue was in a "defective condition unreasonably dangerous" to her. ECF No. 51–1 at 8. Additionally, they argue that the only evidence of record indicates that the case of Aquafina water was, in fact, not defective. *Id.* at 10. In response to the motion for summary judgment, Plaintiff, focusing only on the warning issue, asserts that her product liability claims should survive summary judgment because "there has been no evidence of any warning whatsoever concerning the packaging stretching, tearing, or coming loose if pulled on by the customer." ECF No. 52–2 at 2. In reply, Defendants assert that, because Plaintiff's response is limited to only arguments related to failure to warn, they are entitled to summary judgment as to Plaintiff's strict liability claim to the extent it is not based on a failure to warn. ECF No. 54 at 1. They also argue they are entitled to summary judgment as to Plaintiff's strict liability failure to warn claim because she is unable to prove her claim as a matter of law. *Id.* at 4.

Again, the Court has engaged in a full analysis of the issues related to summary judgment. The Court has analyzed Plaintiff's strict liability claims even though she did not address the Defendants' discussion of those claims in her response to Defendants' motion for summary judgment as outlined. Before

discussing the merits of the parties' arguments in detail, the Court will first outline the general principles for establishing a strict liability products liability claim under South Carolina law. In South Carolina, a products liability case may be brought under several theories, including negligence, strict liability, and warranty. *Bragg v. Hi–Ranger*, Inc., 319 S.C. 531, 462 S.E.2d 321 (S.C. Ct. App. 1995). Regardless of the theory on which a plaintiff seeks recovery, she must establish three primary elements: (1) she was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant. *Id.* at 539, 462 S.E.2d at 326; *see also* S.C. Code Ann. § 15–73–10(1) (1977) ("One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property . . . .").

In South Carolina, "[t]here are three defects a plaintiff in a products liability lawsuit can allege: (1) a manufacturing defect, (2) a warning defect, and (3) a design defect." *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010). "When a manufacturing defect claim is made, a plaintiff alleges that a particular product was defectively manufactured." *Id.* "When a warning defect claim is made, a plaintiff alleges that he was not adequately warned of dangers inherent to a product." *Id.* Finally, "[w]hen a design defect claim is made, a plaintiff alleges that the product at issue was defectively designed, thus causing an entire line of

products to be unreasonably dangerous." *Id.*

Here, Plaintiff's complaint initially asserts that the case of water was in a defective condition. ECF No. 1–1 at ¶ 8. The complaint is not clear as to whether this alleged defect was the result of a design or manufacturing defect. Either way, the analysis here leads to the same conclusion regarding summary judgment. Additionally, in her response to Defendants' motion for summary judgment, Plaintiff only asserts that her strict liability claim is premised on the packaging's lack of warning. ECF No. 52 at 2 ("There has been no evidence of any warning whatsoever concerning the packaging stretching, tearing or coming loose [.]"). Thus, because her pleadings raise all three forms of products liability defects—and in viewing the evidence in the light most favorable to her as the non-moving party— the Court will evaluate Plaintiff's strict liability claim under all three forms of products liability defects.

A.    **Defendants are entitled to summary judgment as to any strict liability claim based on a design or manufacturing defect.**

The Court will first address Plaintiff's strict liability claim to the extent it is based on either a manufacturing defect or design defect. The Court's reason for doing so is both because Defendants' motion for summary judgment considers them together and because there is "not an abundance of case law in South Carolina about how a manufacturing defect differs from other defects." *Fisher v. Pelstring,* 817 F. Supp. 2d 791, 818 (D.S.C. 2011).

First, the Court concludes that there is a basis to find that Plaintiff has abandoned her strict liability claim to the extent it is based on either a design or

manufacturing defect. This is because Plaintiff has not responded to any of Defendants' factual or legal arguments that they are entitled to summary judgment based on the packaging or manufacture of the case of Aquafina water at issue. *See Marshall v. AT&T Mobility Servs., LLC*, No. 3:17-CV-1577-CMC, 2019 WL 1274723 (D.S.C. Mar. 20, 2019), *aff'd*, 811 F. App'x 849 (4th Cir. 2020) ("A plaintiff can abandon claims by failing to address them in a response to a summary judgment motion."); *Jones v. Family Health Ctrs. Inc.*, 323 F. Supp. 2d 681, 690 (D.S.C. 2003) (noting that claim not addressed in summary judgment motion opposition memorandum has been abandoned). Defendants' motion advances both legal and factual arguments as to why they are entitled to judgment as a matter of law on Plaintiff's strict liability claim. *See* ECF No. 51. Yet, Plaintiff's response does not address Defendants' arguments that Plaintiff has failed to establish either a manufacturing or design defect strict liability claim related to the packaging of the case of Aquafina water. ECF No. 52. Instead, in her response, Plaintiff asserts that her strict liability claim is based on Defendants' failure to warn of "the packaging stretching, tearing or coming loose [.]" *Id.* at 2. Because Plaintiff has not addressed Defendant's manufacturing and design defect arguments in her response to their motion for summary judgment, the Court concludes that she has abandoned any strict liability claim based on these alleged defects. Thus, Defendants are entitled to summary judgment as to Plaintiff's strict liability claim to the extent it is based on a manufacturing or design defect because their arguments are not contested.

Yet, even on the merits, the Court would still conclude that summary

judgment on Plaintiff's strict liability claim is appropriate because Plaintiffs cannot, as a matter of law, based on the evidence in the record, prove the prima facie elements of a products liability claim based on either a manufacturing or design defect. Again, to prove a strict liability products liability claim in South Carolina, a plaintiff is required to establish that: (1) she was injured by the product; (2) the product was in essentially the same condition at the time of the accident as it was when it left the hands of the defendant, and (3) the injury occurred because the product "was in a defective condition unreasonably dangerous to the user." *Bragg,* 319 S.C. at 539, 462 S.E.2d at 326. Here, Plaintiff cannot establish the third element that the case of water was in a "defective condition unreasonably dangerous" to her. ECF No. 51. The caselaw is clear—an expert is necessary to establish that the product at issue was in a "defective condition unreasonably dangerous." *See generally Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 79, 735 S.E.2d 650, 658 (S.C. 2012) (Without the testimony of their experts, however, the [Plaintiffs] have no direct evidence of whether the [product] was unreasonably dangerous because there is no identification of a specific design flaw."); *id.* ("the [Plaintiffs] must support their allegations with expert testimony, and without it, their claims are subject to dismissal."); *see also Newbern v. Ford Motor Co.*, 428 S.C. 310, 316, 833 S.E.2d 861, 864 (S.C. Ct. App. 2019) (finding that "[Plaintiff] failed to provide evidence of the design defect . . . [and Plaintiff] failed to provide evidence of a safer alternative design . . . [Plaintiff] did not call their own automotive design expert . . . Instead, the [Plaintiff] called [Defendant's] design

expert prior to the trial, to prove both negligent design and strict liability . . . . [and Defendant's expert] did not offer testimony opinion on the dangerousness or defectiveness of the 2009 Focus's airbag system."); *5 Star, Inc. v. Ford Motor Co.*, 408 S.C. 362, 367, 759 S.E.2d 139, 142 (S.C. 2014) (noting that, at trial, the Plaintiff could not establish that a Ford vehicle's deactivation switch was in a defective condition without qualified expert testimony).

The fact that the case of water's packaging came loose alone does not establish that it was in a defective condition because "[i]t is well-established that one cannot draw an inference of a defect from the mere fact a product failed." *Graves*, 401 S.C. at 80, 735 S.E.2d at 658 (citing *Sunvillas Homeowners Ass'n v. Square D Co.,* 301 S.C. 330, 333, 391 S.E.2d 868, 870 (S.C. Ct. App. 1990)). "Accordingly, the plaintiff must offer some evidence beyond the product's failure itself to prove that it is unreasonably dangerous." *Id.* (collecting cases). Hence, the Court concludes, based on the caselaw cited herein, that a qualified expert opinion is necessary to establish that the case of water was in an unreasonably dangerous condition by addressing the sufficiency of Defendants' shrink packaging, the existence of any design or manufacturing flaws or defects, or the technical basis as to why the case of water's packaging came loose. The previously cited case of *Dubois v. Flint Equip. Co.* provides direction to the Court on this question. 2022 WL 17830611, at *1. The holding in that case is clear: "[t]o establish defectiveness in a technically complex case, a plaintiff must come forward with relevant and reliable expert testimony." *Id.* at *6. Here, Plaintiff has chosen not to proffer an expert to

address the issue of how the case of water "was in a defective condition unreasonably dangerous." Without an expert, she cannot establish that the case of water's allegedly defective packaging proximately caused her injuries because the question of whether the case of water was in a "defective condition unreasonably dangerous" is a matter requiring expert opinion. It is beyond the comprehension of a jury to decide this issue without an expert. Again, caselaw is clear and abundant that experts are necessary to provide testimony on this question. *See generally Graves*, 401 S.C. at 80, 735 S.E.2d at 658 ("In this case, however, we need not determine what quantum of circumstantial evidence of a design defect is necessary to withstand summary judgment because *the lack of expert testimony is nevertheless dispositive of th*e *[Plaintiff's] claim*.") (emphasis added); *see also Byrd Motor Lines, Inc. v. Dunlop Tire and Rubber Corp.*, 63 N.C. App. 292, 302, 304 S.E.2d 773, 780 (N.C. Ct. App. 1993) (applying South Carolina principles of strict liability) ("An insufficient showing of a defective condition or unreasonable danger has been made when [the product] cannot be found, no evidence that it was defective was forecast, *in the form of expert testimony* or otherwise, and no examination of the [product] by one who could make *a meaningful evaluation* was shown.") (emphasis added)). Thus, without an expert, Plaintiff's manufacturing and design defect claims fail as a matter of law.

Additionally, Plaintiff's design defect claim fails as a matter of law because, "in a product liability design defect action, the plaintiff is required to present evidence of a reasonable alternative design." *Branham v. Ford Motor Co.*, 390 S.C.

203, 225, 701 S.E.2d 5, 16 (S.C. 2010). This evidence too must be established through expert opinion because "an alternative design must include consideration of the costs, safety and functionality associated with the alternative design." *Id.* at 225, 701 S.E.2d at 17. In essence, an expert is "required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous." *Id.* Here, Plaintiff has not offered any evidence of an alternative design. She therefore cannot proceed on a strict liability design defect claim. *See Fisher*, 817 F. Supp. 2d at 818 ("The law in South Carolina is that a plaintiff must demonstrate an alternative feasible design in a product liability action based on a design defect. The plaintiffs have not met their burden of producing such proof.").

### B.    Defendants are entitled to summary judgment as to any strict liability claim based on their alleged failure to warn.

In her response in opposition to summary judgment, Plaintiff asserts that her claims are premised on Defendants' failure to warn since "[t]here has been no evidence of warning whatsoever concerning the packaging stretching, tearing, or coming loose if pulled by a customer." ECF No. 52 at 2. Again, in viewing the facts in the light most favorable to Plaintiff, the Court will evaluate Plaintiff's failure to warn argument under both strict liability and negligence theories of liability.

In first evaluating her claim under the principles of strict liability, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's failure to warn claim. First, Plaintiff's failure to warn claim in strict liability fails for the same reason her manufacturing and design defect claim failed under the same

theory of liability: she has not provided evidence, specifically expert testimony, that the case of Aquafina water was defective and thus "unreasonably dangerous" to her. Without this evidence, Plaintiff cannot prove the elements of her claim as required. *See Holland ex rel. Knox v. Morbark, Inc.*, 407 S.C. 227, 239, 754 S.E.2d 714, 721 (S.C. Ct. App. 2014) ("All products liability claims share common elements; therefore, [plaintiff]'s failure to establish a reasonable alternative design in his design defect claim prevents [plaintiff] from succeeding on his failure to warn claim as a matter of law."); *see also Branham*, 390 S.C. at 210, 701 S.E.2d at 8 (holding the failure to establish any one of the three elements in a companion products liability claim is fatal to all related products liability claims); *Lawing v. Trinity Mfg., Inc.*, 406 S.C. 13, 27, 749 S.E.2d 126, 133 (S.C. Ct. App. 2013) (citing to *Branham* and stating all products liability causes of action turn on the question of reasonableness).

Plaintiff asserts that her failure to warn claim should survive summary judgment because "[i]t is certainly foreseeable that a customer who has to reach into the depths of a display to pull a 32 count case of water forward in order to get it is likely to have an accident or become injured going through such contortions." ECF No. 52 at 2. However, suggesting that a product needs a warning based on the foreseeability of an injury does not automatically make the condition of the case of water unreasonably dangerous. *See Campbell v. Gala Indus., Inc.*, No. CIV.A.6:04-2036-RBH, 2006 WL 1073796, at *4 (D.S.C. Apr. 20, 2006) ("At the outset, this court notes that the South Carolina Supreme Court has held that the fact that a product

could have been more safe is not sufficient to support a finding that it is unreasonably dangerous.") (citations omitted). This is because, under the principles of strict liability, "[w]hile the plaintiff is relieved from proving fault by the manufacturer, 'the manufacturer is not held as an insurer against all losses caused by the product but rather is to be held responsible only for damages attributable to some failure of the product to perform with reasonable safety in its *normal environment.*'" *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 263 (4th Cir. 1998) (quoting *Bragg*, 462 S.E.2d at 327) (emphasis in original). Here, Plaintiff has not proffered an expert showing that the case of water is a "defective condition unreasonably dangerous," and the "mere fact" her accident occurred is "insufficient evidence to establish a prima facia case" that the case of water at issue was defective. *Williams v. Leake*, No. 2011-UP-074, 2011 WL 11733089, at *1 (S.C. Ct. App. Feb. 23, 2011).[2] She therefore cannot proceed on her strict liability failure to warn claim as a matter of law because she has not provided evidence establishing that the case of water at issue was "unreasonably dangerous." *See Holland*, 407 S.C. at 239, 745 S.E.2d at 721 (noting that success on a failure to warn claim "hinges" on whether a product is unreasonably dangerous).

Second, in order to create an issue for the jury on a failure to warn claim in strict liability, a plaintiff is required to submit "competent evidence" indicating that

---

[2] *See also Marchant v. Mitchell Distrib. Co.*, 270 S.C. 29, 36, 240 S.E.2d 511, 514 (S.C. 1977) (stating the fact that an injury occurred and the fact that the allegedly defective product could have been more safe are not sufficient to support a finding that the product in question was unreasonably dangerous); *Campbell v. Robbins Tire & Rubber Co.*, 256 S.C. 230, 234, 182 S.E.2d 73, 75 (S.C. 1971) (holding the mere fact that a tire tube exploded "does not demonstrate the manufacturer's negligence nor tend to establish that the tube was defective ") (emphasis added); *Bragg*, 319 S.C. at 543, 462 S.E.2d at 328 ("[T]he mere fact that a product malfunctions does not demonstrate the manufacturer's negligence nor does it establish that the product was defective.").

a product is unreasonably dangerous without a warning or other safety feature. *Id.* (citing *Marchant v. Lorain Division of Koehring*, 272 S.C. 243, 251 S.E.2d 189, 191 (S.C. 1979). Notably, all the cases cited in the briefing require an expert to prove that a warning is necessary. *See Dubois*, 2022 WL 17830611, at *1; *Hickerson v. Yamaha Motor Corp., U.S.A.*, No. 8:13-CV-02311-JMC, 2016 WL 4367141, at *1(D.S.C. Aug. 16, 2016. Expert opinion is needed because "the issue is whether the lack of a proper warning made the product unreasonably dangerous . . . phrased differently the issue is . . . was the warning adequate?" *Werner v. Upjohn Co.*, 628 F.2d 848, 858 (4th Cir. 1980). Moreover, a product's need for a warning and whether its warning is adequate are one in the same, because a warning is not adequate if it is non-existent, and expert testimony, under the authorities cited, is required to establish the adequacy or inadequacy of a warning. *See Hickerson*, 2016 WL 4367141, at *4. As noted in *Hickerson*, this is "[b]ecause the adequacy of warnings in products liability cases tend to implicate the study of human factors and other industry standards . . . . *expert testimony is perhaps the most appropriate form of evidence* to support Plaintiff's claims since those areas are generally beyond the common knowledge of a jury." *Id.* (emphasis added); *see also Dubois*, 2022 WL 17830611, at *6 ("As a threshold matter, the Court concludes that Plaintiffs' claims fall short as a matter of law without the benefit and support of expert testimony on the issues of whether the Loader lacked adequate warnings").

Plaintiff's failure to warn claim fails as a matter of law because she has not proffered expert opinion outlining why the case of water "was in a defective

condition unreasonably dangerous." Similarly, even if she had established that the case of water was defective because it was unreasonably dangerous, the Court still concludes that Defendant's are entitled to summary judgment on Plaintiff's strict liability failure to warn claim because she has not proffered any rebuttable evidence as to the adequacy or inadequacy of any warnings (*i.e.*, the *need* for a warning in the first place). *See id.* at *2 (noting that the plaintiff proffered an expert witness to "offer an opinion that the side of the [product] needed an additional warning [.]"); *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 483 (4th Cir. 2018) ("The district court did not exclude [plaintiff]'s warnings claims merely because they lacked expert testimony; rather, it required her to support those claims with *any* admissible evidence. In this regard, [plaintiff] simply failed."). For these reasons, the Court concludes that Defendants are also entitled to summary judgment as to Plaintiff's strict liability claim to the extent it is based on their alleged failure to warn her of the packaging stretching, tearing, or coming loose.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NEGLIGENCE CLAIM

Plaintiff's final cause of action is a negligence claim. Specifically, Plaintiff asserts that Defendants were negligent in (1) "failing to properly package the case of Aquafina water," (2) "failing to adequately inspect the case of Aquafina water," (3) "failing to warn the Plaintiff of the risk of the packaging tearing or coming lose," and (4) "failing to properly exhibit the case of Aquafina water [.]" ECF No. 1–1 at ¶ 16. As illustrated, Plaintiff's first three allegations under this cause of action are based on a products liability theory of negligence, while her fourth allegation

sounds in premises liability. In order to view the evidence in the light most favorable to Plaintiff, the Court will address her products liability and premises liability allegations separately. In doing so, and for the reasons that follow, it concludes that Defendants are entitled to summary judgment.

### A.  Defendants are entitled to summary judgment on Plaintiff's products liability negligence claim.

As noted, products liability claims can be brought under both theories of negligence and strict liability. "Although substantial similarities in analysis exist between strict liability for the sale of defective products and negligence principles of liability, especially in design and inadequate warning cases, differences do exist." *Bragg*, 319 S.C. at 538, 462 S.E.2d at 325. As with a strict liability claim, to establish a products liability claim under a negligence theory of liability, a plaintiff in a products liability action must show: (1) she was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant. *Id.* "However, under a negligence theory, the plaintiff bears the additional burden of demonstrating the defendant (seller or manufacturer) failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault." *Id.*

Here, the Court need not conduct an extensive analysis of Plaintiff's products liability negligence allegations because they are "of no moment where, as here, there is no showing in the first instance of a product in a defective condition

unreasonably dangerous to the user." *Branham*, 390 S.C. at 210, 701 S.E.2d at 9. Thus, "the failure to establish that the [product] was in a defective condition unreasonably dangerous to the user for purposes of the strict liability claim requires the dismissal of the companion negligence claim." *Id.* Here, as outlined extensively *supra*, Plaintiff has not proffered any evidence that the case of water was in a defective condition unreasonably dangerous to her. Again, "the mere fact that a product malfunctions does not demonstrate the manufacturer's negligence nor does it establish that the product was defective." *Bragg*, 319 S.C. at 543, 462 S.E.2d at 328. Further, as discussed in detail, expert evidence is necessary, which Plaintiff has not proffered here. Without this evidence, she cannot proceed with her products liability claim under a negligence theory of liability. Defendants are therefore entitled to judgment as a matter of law.

### B. Defendants are entitled to summary judgment on Plaintiff's premises liability negligence claim.

Plaintiff's remaining negligence claim sounds in premises liability. She asserts that Defendants were negligent "[i]n failing to properly exhibit the case of Aquafina water," making it dangerous to Plaintiff. ECF No. 1–1 at ¶ 16. Thus, she posits, they violated the duty of care they owed to her as a business invitee. ECF No. 52.

In South Carolina, neither retailers nor their agents are insurers of the safety of their invitees. *Garvin v. Bi-Lo, Inc.*, 343 S.C. 625, 628, 541 S.E.2d 831, 832 (S.C. 2001). To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, a plaintiff must make one of two alternate

showings: "(1) that the injury was caused by a specific act of the respondent which created the dangerous condition; or (2) that the respondent had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Id.* (collecting cases). Evidence of a defendant's specific act or its actual or constructive knowledge of the allegedly dangerous condition is necessary because establishing liability in its absence would render the defendant an insurer of its customers' safety [and] this is simply not the law in South Carolina." *Id.* at 629, 541 S.E.2d at 833 (citing *Felder v. K–Mart,* 297 S.C. 446, 377 S.E.2d 332 (S.C. 1989) (a merchant is not an insurer of the safety of his customers but rather owes them a duty to exercise ordinary care to keep the premises in a reasonably safe condition)). Here, Defendants are entitled to summary judgment because Plaintiff has not met her burden of making either alternate showing for establishing a premises liability negligence claim.

First, Plaintiff has not established that any specific act of Defendants in exhibiting the case of water created a dangerous condition. In her reply, Plaintiff asserts that her premises liability claim is viable because:

> [a] jury could reasonably conclude that displaying the water in question such that a customer has to squat down and practically get on their knees in order to get to the case of water in question creates a condition in which there is a reasonable generalized greater than order danger of injury in going through such contortions in order to get the desired item.

ECF No. 52 at 3. Yet, solely relying on the way a product was exhibited and sold is insufficient to establish a premises liability negligence claim. *See Garvin*, 343 S.C. at 625, 541 S.E.2d 831 ("The evidence relied upon by [plainitiff] is as follows: (1) the

cans were stacked in their original boxes at the end of an aisle, (2) the cans were stacked above [plaintiff]'s height of 5′2″ tall, and (3) the cans were put on sale at four for one dollar. This evidence is insufficient, as a matter of law, to demonstrate the store created a dangerous condition."). There must be a showing that the product, as displayed or exhibited, created a risk to the consumer. Here, the case of water was not actually "exhibited" or "displayed" in a dangerous way. The case of water was simply sitting on a wooden pallet for sale. That placement alone did not create a dangerous condition, and the case of water at issue was not stacked. *See id.* (citing *Chaslon v. Waldbaum, Inc.*, 266 A.D.2d 177, 697 N.Y.S.2d 342 (N.Y. 1999) (in absence of any evidence display was defective or that defect in display was cause of bottle falling, which caused plaintiff's accident, store was entitled to summary judgment). Hence, "[a]bsent evidence of some defective manner of [exhibiting a product], or that [Defendants were] on notice that the [product] had become [dangerous], there is simply no evidence from which a jury could find a dangerous condition was created by [Defendants]." *Id.* Plaintiff has not proffered any persuasive evidence other than her own conjecture that a specific act of Defendants caused the cases of Aquafina water to be exhibited in a dangerous manner—again, it was simply resting on a pallet. *See Assa'ad-Faltas v. Wal-Mart Stores E., L.P.*, No. CV03183563TLWSVH, 2021 WL 2228464, at *4 (D.S.C. Jan. 11, 2021), *report and recommendation adopted*, No. CV 3:18-3563-TLW, 2021 WL 2227350 (D.S.C. June 1, 2021), *aff'd sub nom.*, *Assa'ad -Faltas v. Wal-Mart Stores E., L.P.*, No. 21-2094, 2022 WL 17103717 (4th Cir. Nov. 22, 2022) ("although Plaintiff argues that

the placement of the wooden stools on a top shelf, in and of itself, created an 'inherently dangerous' condition; Plaintiff offers no evidence beyond her own opinion in support.").[3] Similarly, as noted *supra*, there is no evidence of record that the case of Aquafina water in question was in fact dangerous as exhibited. Thus, Plaintiff cannot establish the first alternative showing for establishing a premises liability claim based on the case of Aquafina water being exhibited in a dangerous or defective condition.

Similarly, Plaintiff has not produced any persuasive evidence in support of the second alternative showing that Defendants had actual or constructive knowledge of any allegedly dangerous or defective condition related to the way the cases of Aquafina water were exhibited. To do so, she is required to show that the Defendant's "had actual or constructive knowledge of [the allegedly dangerous condition] and failed to remedy the hazard." *Washington v. Dillards Inc.*, No. 2:16-CV-01445-DCN, 2018 WL 2011531, at *3 (D.S.C. Apr. 30, 2018); *Garvin,* 343 S.C. at 629, 541 S.E.2d at 833 ("absent some evidence of some defective manner of staking

---

[3] *See, e.g., Jackson v. OSI Rest. Partners, LLC*, No. 2014-001861, 2016 WL 4792189, at *1 (S.C. Ct. App. Sept. 14, 2016) (considering expert evidence and industry standards to determine whether a curb ramp was a dangerous condition); *Pringle v. SLR, Inc. of Summerton*, 675 S.E.2d 783, 787 (S.C. Ct. App. 2009) (considering expert evidence to determine whether a residential chair used in a restaurant was a dangerous condition); *Cook v. Food Lion, Inc.*, 491 S.E.2d 690, 692 (S.C. Ct. App. 1997) (considering employees' testimony concerning the tendencies of the floor mats to wrinkle or crumple and trip people to determine if the mats were a dangerous condition); *see also Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 448, 452 (4th Cir. 2004) (applying Virginia law) (stating "it is not entirely clear from the evidence whether the mirror display was an unsafe condition at all" where the display area was in disarray and the plaintiff was struck by several mirrors that fell from the upper shelf, but where the plaintiff had not moved or touched the mirrors*); Byrd v. Wal-Mart Stores, Inc.*, No. 98-2261, 2000 WL 20576, at *1–2 (4th Cir. Jan. 13, 2000) (applying Maryland law) (holding "a jury reasonably could infer from the evidence presented that Wal-Mart's shelving and stacking of the boxed toys at a height from which they could fall onto the heads of customers standing in the aisles created an unreasonable danger" where boxes fell from a shelf that was approximately six feet high and knocked the plaintiff unconscious, but where the plaintiff had not touched the boxes).

the boxes, or that [defendant] was on notice the stacked cans had become rickety, there is simply no evidence from which a jury could find a dangerous condition was created by [defendant].”); *but see Pecko v. Target Corp.*, No. 9:19-CV-02295-DCN, 2021 WL 62579, at *3 (D.S.C. Jan. 7, 2021) (finding that summary judgment on the plaintiff's claims was "inappropriate" because defendants had notice of the condition causing the plaintiff's fall because she could point to video showing that the defendant created the condition "at issue by placing and leaving the boxes that [the plaintiff] tripped on in the aisle.")  Plaintiff has not made this showing because she has not submitted any evidence that the Defendants were aware of a dangerous condition related to the exhibiting of the Aquafina cases prior to Plaintiff's fall.

Moreover, the only evidence of record before the Court indicates the opposite: that Defendants had no actual or constructive notice. In his declaration, Mr. McGarvey states, "other than the one that is subject of this lawsuit, in 2019, there were no complaints, notices of accidents, complaints of injury, report of accidents related to thirty-two count cases of Aquafina sold at Walmart stores located in South Carolina." ECF No. 51–2 at ¶ 3.  Based on both this unrebutted, sworn statement and the fact that Plaintiff has offered no evidence of Defendants' actual or constructive knowledge of a dangerous or defective condition on the premises, the Court concludes that Plaintiff cannot make the second showing for establishing a premises liability claim based on a dangerous or defective condition related to the way the case of water was exhibited for sale. In summary, a case of water sitting on a pallet, not stacked, is not dangerous as exhibited. Accordingly, the Court

concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's premises liability claim.

CONCLUSION

For the foregoing reasons, the Court finds that there is no dispute of material fact that Defendants are entitled to judgment as a matter of law as to Plaintiff's remaining strict liability and negligence claims. Therefore, The Court grants Defendants' motion for summary judgment, ECF No. 51.

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

December 13, 2023
Columbia, South Carolina